**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

THOMAS SEVERINO, SR., THOMAS SEVERINO, JR., DAWN POREDA, GLENN
POREDA, JOSEPH HONAHAN, KRISTIN HONAHAN AND JEFFREY OWENS

Plaintiffs,

v.

KLYTIE'S DEVELOPMENTS, INC.;
EFRAT FRIEDMAN;
HIDAI FRIEDMAN;
KLYTIE'S DEVELOPMENTS, LLC; AND
JASON J. SHARKEY,

Defendants.

_____

COMPLAINT AND JURY DEMAND
_____

1.    Plaintiffs, Thomas Severino, Sr., Thomas Severino, Jr., Dawn Poreda, Glenn

Poreda, Joseph Honahan, Kirstin Honahan and Jeffery Owens, hereby state and allege as

follows:

**PARTIES**

2.    Plaintiff Thomas M. Severino, Sr., is an individual residing at 23649 E. Otero

Drive, Aurora, Colorado 80216.

3.    Plaintiff Thomas M. Severino, Jr., is an individual residing at 13390 Misty

Street, Broomfield, Colorado 80020.

4.      Plaintiffs Dawn Poreda and her spouse, Glenn Poreda, are individuals residing at 19065 E. 120th Place, Commerce City, Colorado 80022.

5.      Plaintiffs Joseph Honahan and his spouse, Kirsten Honahan, are individuals residing at 23324 Allendale Avenue, Parker, Colorado 80138.

6.      Plaintiff Jeffrey Owens is an individual residing at 7651 South Cove Circle, Littleton, Colorado 80122.

7.      Defendant Klytie's Development, Inc., ("Klytie's") was incorporated in Alberta, Canada, on March 8, 2005, with its registered office located in Calgary, Alberta, Canada. Klytie's holds itself out as a private investment fund management company and claims that it manages several investment funds, including a fund referred to as the "Klytie's Developments, Inc. Global Real Estate Fund" or "GREF".

8.      Defendant Hidai Friedman is a male adult individual whose last known address is 57 Aspen Ridge Way SW, Calgary, Alberta, Canada T3H5M2.  Hidai Friedman is a former mutual fund dealer and holds 40% of Klytie's shares of stock.  At all times relevant to the events described in this Complaint, Hidai Friedman was an officer, director, agent, member, partner, employee and control person of Klytie's and Klytie's Developments, LLC.  Friedman also holds himself out as the manager of the Fund.

9.      Defendant Efrat Friedman is a female adult individual whose last known address is 57 Aspen Ridge Way SW, Calgary, Alberta, Canada T3H5M2, and is the wife of Hidai Friedman.  Efrat Friedman is a director of Klytie's and also holds 40% of the Klytie's shares in Klytie's Developments, LLC.

10.     Defendant Klytie's Developments, LLC, ("Klytie's, LLC") is a limited liability company organized under the laws of the State of Colorado on July 7, 2005, and doing

business at 1489 Steele Street, #314, Denver, Colorado 80206.  Klytie's Development, Inc., with an address of 1489 Steele Street, #314, Denver, CO 80206 is listed as the name of the business organization forming the limited liability company.  The GREF fund prospectus lists Klytie's, LLC as a subsidiary of Klytie's.

11.     Defendant Jason J. Sharkey is a resident of Denver, Colorado, residing at 1489 Steele Street, #314, Denver, Colorado 80206.

12.     Defendants Efrat Friedman, Hidai Friedman, and Jason Sharkey, by reason of their direct and substantial management positions and responsibilities during the time relevant to this Complaint were "controlling persons" of Klyties, LLC and "controlling persons" of Klyties.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over the action pursuant to Section 10(b),12 and 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.A. § 78aa and 78j(b); and 28 U.S.C.A. § 1331 (federal question).

14.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act in that the Defendants transacted substantial business in the district, and because many of the acts, transactions, and occurrences alleged herein, including the preparation, issuance and dissemination to the investing public of materially false and misleading information, occurred, at least in part, in this district.

15.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including mail, and telephone communications.

## SPECIFIC ALLEGATIONS

16.     Jason Sharkey began a relationship with the Severino family members in 2005. On about May 5, 2005, Sharkey had caused Ms. Donna Byrd, a Colorado real estate agent, to organize a social gathering. Byrd had been specifically asked by Sharkey to arrange the gathering in order to market investments in Klytie's to the Severinos.

17.      Byrd, who resides at 18126 E. Alamo Drive, Centennial, Colorado, agreed to arrange the gathering at her home because Jason Sharkey was employing her as Klytie's real estate broker in Colorado.  Present were Jason Sharkey, his spouse, members of the Severino family, and Mr. Sal Larosa some of whom were neighbors and/or acquaintances of Byrd.

18.     Sharkey introduced his wife, who he claimed was a member of a wealthy family.  Sharkey then made numerous representations to Plaintiffs regarding Klytie's Global Real Estate Fund ("GREF"). The representation that all Plaintiffs in attendance recalled later was that GREF guaranteed an annual return of 10% and regularly returned between 30% and 40%.

19.     Prior to investing, the Severino family undertook substantial due diligence. For example, on August 18, 2005, Tom Severino, Jr. requested an audit of Klytie's.  In response, on August 25, 2005, Tom received an e-mail from Christopher L. Klaus of "KPMD Financial Services," which contained an alleged summary of the 2004 audit of Klytie's Developments, Inc.  However, upon information and belief, no individual named Christopher L. Klaus exists.  Further, there is no employee by that name at any firm called "KPMD Financial Services" in Toronto.  Further, there is no internet domain named www.kpmd.biz from which the e-mail claims to originate.

4

20.     Later that same summer, Klytie's sponsored a golf tournament on behalf of Gilda's Club Worldwide, a non-profit organization supporting cancer patients, at Heritage Eagle Bend Golf Course in Aurora, Colorado.  Jason Sharkey organized the event.  During the course of the tournament, Sharkey made representations about Klytie's to many potential investors.  Tom Severino, Jr. and Tom Severino, Sr. participated in the tournament.

21.     During the tournament, Tom Severino, Sr., explained to Sharkey that his retirement goals required monthly dividend payments.  Sharkey told him that he would receive monthly distributions and that his retirement goals would be accommodated if he were to invest in GREF and then make a significant additional investment.

22.     One of the investors present at the golf tournament was Shawn Padalecki. Padalecki invested $10,000 in Klytie's in November of 2005 on the basis of the representations made at the golf tournament and on the basis of the Klytie's Global Real Estate Prospectus.  Padalecki agreed to keep the investment in Klytie's for one year.  After one year, Padalecki successfully withdrew approximately $13,000 from the fund: a purported return of 30%.  While Padalecki originally planned to roll his investment over into GREF a second time, he had been completing his securities license training at the time (Series 6 and 63) and suspected that the Klytie's disclosures were non-conforming with U.S. law.  Padalecki's suspicions were heightened when Hidai Friedman refused to provide him with a basic tax form for his 2006 capital gains tax reporting.  As a consequence, Padalecki did not re-invest.

23.     Another investor who participated in the golf tournament was Plaintiff Jeffrey Owens.  It was here that Owens met Jason Sharkey for the first time.  During a round of

golf, Sharkey told Owens about Klytie's.  Specifically, Sharkey represented that the annual return of GREF had been approximately thirty to forty percent (30-40%) over the past several years.   Sharkey provided Owens with a Klytie's Global Real Estate Fund Prospectus and informed Owens that there was a $10,000 minimum investment.  Owens informed Sharkey that his investment would come from the proceeds of the sale of a rental property that Owens planned to sell.  Owens specifically informed Sharkey that if he were to invest in Klytie's, Owens would have a $12,000 capital gain tax problem upon the sale of his real estate.  In order to induce the sale, Sharkey replied that Klytie's would add that amount to Owen's prospective Klytie's account if Owens were to invest in Klytie's.  These representations induced Owens to invest $71,000.

24.     Plaintiffs Tom Severino Sr. and Tom Severino Jr. and his spouse, Angela Severino met with Jason Sharkey and Hidai Friedman separately at the Highland Hills Golf Club on September 5, 2005.  Hidai Friedman presented them with investment materials which listed real property owned by Klytie's, including parcels in Israel, Panama, and the Cayman Islands.  Hidai Friedman explained that Klytie's guaranteed a 10% annual return on any investment, but that the annual returns had consistently been between 30% and 40%.

25.     Jason Sharkey represented that Klytie's was part of Hadai Friedman's family corporate structure, which was nominally under the direction of his wealthy uncle in Israel. During a meeting between Jason Sharkey and Tom Severino, Jr. in the summer of 2006, Sharkley represented that the family group was well diversified and that all they lacked was a bank, which they were seeking to acquire in Phoenix, Arizona.  During this same meeting, Sharkley informed Tom Severino, Jr. of Klyties recent purchase of a mortgage broker

company. The addition of the bank and mortgage company would allow for Klyties to keep all aspects of the business 'in house' and would amount to greater returns for investors, according to Jason Sharkey.

26.    Tom Severino, Jr., then explained that if he pulled money from his 401(k) plan, he would owe additional federal taxes. Hidai Friedman offered to 'credit' his account for the tax penalty. On the basis of these representations by Friedman, Tom Severino Jr. and his spouse agreed to invest in GREF.

27.    In the interim, Sal Larosa ("Larosa"), an individual related to the Severino family, had independently decided to invest in GREF on the strength of the representations made at Donna Byrd's social gathering and those in the GREF prospectus. In addition, Jason Sharkey had represented to Larosa that GREF was involved in high-end commercial "fix-and-flips" in the "top five" global real estate markets. Sharkey told Larosa that GREF would be investing in a Colorado golf course property as part of this investment strategy. Larosa invested in GREF in August of 2005. One year later, in August 2006, Larosa was in fact successful in withdrawing his funds from GREF. Larosa's initial investment of $35,000 was apparently repaid in the amount of $47,500 after an initial investment period of only one year. Larosa purchased a new automobile with the proceeds of the investment and his success quickly became known within his circle of friends. Larosa received his funds in the form of a cashiers check directly from Jason Sharkey, not in the form of a company check from Klyties.

28.    Plaintiffs Joseph and Kirsten Honahan also heard about the apparent good fortune of Mr. Larosa through the Severino family. After speaking with Larosa, Kirsten Honahan made inquires and obtained Sharkey's phone number. After Kirsten called, Jason

Sharkey arranged to visit Joseph and Kirsten Honahan at their home on about August 23, 2006. Sharkey explained the 10% guaranteed return and that the average investment in GREF had become larger with each proceeding year. Sharkey told the Honahans that they had 'nothing to lose' because the lowest return they could receive was 10%. Sharkey stated that GREF had real property holdings in world-wide locations, including the locations in the Bahamas and including a Colorado golf course. Sharkey presented the Honahans with a Klytie's Global Real Estate Prospectus during the meeting and explained the agreement that the Honahans would be required to keep their funds in Klytie's for at least one year. Sharkey also made it clear that this was the 'last opportunity to get in the door' because the fund would be closing to small investors. The Honahans invested $25,000.

29.     Kirsten Honahan lost access to her on-line account later that same year following her investment of $25,000. When she e-mailed Klytie's in December of 2006, she was informed that Sharkey had been terminated as an employee and that there was no further information with regard to her investment.

30.     Plaintiffs Dawn and Glenn Poreda first met Jason Sharkey in December of 2005 in their home. The occasion for that meeting was to turn over a substantial investment check to Klytie's in the amount of $80,000. The Poreda family first heard of Sharkey through Dawn Poreda's family, the Severinos, during Thanksgiving in 2005.

31.     The Poreda family subsequently met with Sharkey again in the Cayman Islands. Upon Sharkey's invitation, Mr. and Mrs. Poreda accompanied Sharkey to several beach-front construction projects which were to be developed into six or seven beach-front homes. At that time, Sharkey represented these projects as holdings of Klytie's. Mr. and Mrs. Poreda were suitably impressed with the development and returned to the U.S. with a

favorable opinion of Jason Sharkey and Klytie's.  However, upon information and belief, Klytie's owned no such developments in the Cayman Islands.

32.     The remaining Severino family members invested in December of 2005.  Tom Severino, Sr. invested $70,000.  Tom Severino, Jr. and his spouse Angela Severino invested $50,000.

33.     In a lunch meeting on about March 7, 2006, Sharkey provided Marilyn Bridges with an investment prospectus, which they reviewed together. Sharkey added that in addition to the information provided in the Prospectus, Klytie's also invested in third-world countries in low-cost housing projects.  These representations caused Bridges to invest $50,000, which she paid to Sharkey by personal check.

34.     Prior to investing, each investor was presented with Klytie's "Company Disclosure Information Booklet."  Jason Sharkey provided the booklet to each Investor personally.  Within that document, there is a letter, signed by Wayne M. Smith, which purports to confirm that TD Canada Trust, Trust Services Department, acts as Trustee for a private trust known as Klytie's Developments, Inc. Global Real Estate Fund.

35.     The Company disclosure information booklet specifically states "Given the company guarantee to its investors all titles of assets owned by the company are held in trust by the trustee to ensure that investors will receive their minimum annual return of 10%." Based on the investigation of the Alberta Securities Commission, this document is false. There is no trustee within TD Canada Trust acting for the benefit of any such trust.

36.     Within the Company Disclosure Booklet, Plaintiffs found an asset list for fiscal years 2002 through 2004.  Fiscal year 2004 lists fourteen parcels of real property at various global locations which supposedly had a book value of $51,741,960 and a net cash flow of

$6,622,579.

37.     Unless otherwise stated, none of the individuals identified have received the return of their principal or any return of their investment in Klytie's.

38.     Mr. Thomas Ritchie, a Securities Investigator employed with the Alberta Securities Commission ("ASC") undertook an extensive investigation into Klyties and the properties stated to be owned by Klyties in particular. He determined that the two properties in Vancouver (allegedly valued at $11,500,000) do not exist.   The property in Toronto does not exist and the property in Arizona also does not exist.  One of the properties in Calgary, a residential rental property, was assessed by the City of Calgary at $150,000 whereas the same property was valued by Klytie's at $3.8 Million.  A large shopping mall claimed on the asset list is in fact wholly owned by an unrelated Vancouver-based development company.  The Alberta Securities Commission concluded that the two remaining Alberta properties were too vaguely described to indicate a probable location.   There is, according to Mecklenburg County records, no address of 12750 N. Ryon in Charlotte, North Carolina.

39.     On June 5, 2007, several Defendants made material admissions of falsity with regard to these allegations in a public Settlement Agreement signed with the Alberta Securities Commission. The misrepresentations recited therein and the accompanying admissions of falsity are incorporated herein by this reference.  <u>See</u>, Exhibit A.

40.     Defendants used the Prospectus and the Company Disclosure Information Booklet to market and sell securities generally to the public.


**<u>FIRST CLAIM FOR RELIEF:</u>**

(Violation of Section 10(b) Of the Exchange Act and Rule 10b-5)

41.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 40.

42.     This claim is asserted by Plaintiffs against all Defendants and is based upon Section 10(b) of the 1934 Act, 15. U.S.C.A. § 78j(b) and Rule 10b-5 promulgated thereunder.

43.     Defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct and conspiracy to obtain investment monies by making intentionally false statements of material fact and by concealing adverse material information as specified herein.  Defendants recklessly employed devices, schemes, and artifices to defraud and recklessly engaged in acts, practices, and a course of conduct as herein alleged in an effort to generate market demand for their securities.  This included the formulation, making of and/or participating in the making of untrue statements of material facts and the omission to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

44.     Defendants' acts and practices operated as a fraud and deceit upon Plaintiffs by creating a belief that Kltyties owned numerous real estate properties which was and is not true and by creating a belief that Klyties had a trust account where investment monies were safely placed which was also not true.

45.     The statements particularized above were false and misleading when made by Defendants, and/or in the name of Klyties.  Defendants made the statements identified above which were materially false and misleading in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

46.     With intentional, knowing and reckless disregard for the truth, Defendants caused Klyties and Klyties, LLC to make the statements containing misstatements and omissions of material fact as alleged herein.  Plaintiffs relied on the statements set forth above in making investment decisions to purchase shares or interests in GREF.

47.     Had Plaintiffs known of the materially false statements and adverse information which was not disclosed by Defendants, Plaintiffs would not have purchased interests in GREF at all, or not at the artificially inflated prices, and would not have sustained damages.

## SECOND CLAIM FOR RELIEF

(Violation of Section 20 of the Exchange Act)

48.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 47.

49.     This claim is asserted against Defendants Hidai Friedman, Efrat Friedman, and Jason Sharkey and is based on Section 20(a) of the Exchange Act.  Defendants Hidai and Efrat Friedman and Jason Sharkey acted as controlling persons of Klyties and Klyties, LLC, within the meaning of Section 20 of the Exchange Act.  By reason of their positions as senior officers and directors of Klyties and Klyties, LLC, these Defendants had the power and authority to cause or to prevent the wrongful conduct complained of herein.

50.     By reason of such wrongful conduct, these Defendants are liable to Plaintiffs pursuant to Section 20 of the Exchange Act.  As a direct and proximate result of the

Defendants' wrongful conduct, the Plaintiffs suffered damages in connection with their purchases of GREF.

### THIRD CLAIM FOR RELIEF

(Violation of Sec. 12 (a)(1) , Sales of Unregistered Securities)

51.    Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 50.

52.    Defendants violated Section 12 (a)(1) of the Securities Act by selling securities to the public without a Registration Statement.

53.    While Defendants asserted that GREF was a private investment fund, in fact it was offered to any and all persons willing to give Klyties money regardless of their prior investment experience, income or assets and to persons who were not qualified investors under Federal law.

54.    As a result all Plaintiffs are entitled to return of all monies invested in GREF.

### FOURTH CLAIM FOR RELIEF

(Violation of Section 12 (a)(2), Untrue Statements in Prospectus)

55.    Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 54.

56.    Defendants sold securities by means of a Global Real Estate Prospectus and oral statements that contained untrue statements of material facts. As a result, all plaintiffs are entitled to recover losses caused by the untrue statements, which are all the monies invested.

### FIFTH CLAIM FOR RELIEF

(Theft under CRS 18-4-401)

57.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 56.

58.     The actions of Defendants in taking property rightfully belonging to Plaintiffs constitutes theft of Plaintiffs' property under C.R.S. § 18-4-401, including obtaining or exerting control over Plaintiffs' property and knowingly intending to permanently deprive Plaintiffs of the use or benefit of such property.

59.     The actions of Defendants have caused damages suffered by Plaintiffs including, without limitation, the personal use of Plaintiffs' property by Defendants for their own purposes. The funds frozen by the Commissioner are, upon information and belief, directly derived from Plaintiffs.

60.     Pursuant to C.R.S. § 18-4-405, Plaintiffs, as owners of the property wrongfully taken, are entitled to actual and treble damages, plus attorney's fees and costs from Defendants.

## SIXTH CLAIM FOR RELIEF

### (Fraud)

61.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 60.

62.     Defendants made false representations of and concealed past and present facts, which they had a duty to disclose to Plaintiffs including, without limitation, that Defendants were not investing Plaintiffs money in a trust; that the trust owned parcels of specific Canadian, U.S. and Israeli real property; and that Defendants were utilizing Plaintiffs' funds for their own personal benefit and use.

63.     At the time these representations were made, Defendants knew the representations were false; or Defendants were aware that they did not know whether the representations were true or false.

64.     Defendants made representations with the intent that Plaintiffs would rely on those representations.

65.     Plaintiffs did in fact rely on the representations.

66.     Plaintiff's reliance was justified.

67.     This reliance caused and continues to cause substantial injuries, damages and losses to Plaintiffs, including those set forth above.

## FIFTH CLAIM FOR RELIEF

(Violation of Colorado Securities Laws, C.R.S.11-51-301)

68.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 67.

69.     The interests offered and sold by Defendants as described in this Complaint are "securities" in that they are at least "investment contracts" or "certificates of interest" or "participation in any profit-sharing agreement," as defined in C.R.S. § 11-51-201(17).

70.     By engaging in the conduct described above, Defendants and their agents, have made "offers" or "sales" of securities in the state of Colorado pursuant to C.R.S. § 11-51-201(13).

71.     The securities that Defendants and their agents offered or sold were not registered or exempted from registration as required by C.R.S. § 11-51-301.

72.     By engaging in the conduct described above, Defendants offered to sell or sold unregistered securities in violation of C.R.S. § 11-51-301.

73.     Plaintiffs are entitled to an award of damages, interest, costs, attorney's fees, restitution, disgorgement and other equitable relief as persons injured by Defendants conduct based on said violations.

### SIXTH CLAIM FOR RELIEF

(Colorado Securities Fraud, C.R.S. 11-51-501)

74.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 73.

75.     The conduct described above in this Complaint constitutes additional violations of the Colorado Securities Act in at least the following respects:

a.      In connection with offer, sale, or purchase of securities in Colorado, Defendants, directly or indirectly:

employed a device, scheme or artifice to defraud;

made written and oral untrue statements of material fact or failed to state material facts necessary to make such statements, in light of the circumstances under which they were made, not misleading; or

engaged in acts, practices or courses of business which operated and would operate as a fraud and deceit on investors;

all of which are in direct violation of C.R.S. § 11-51-501(1);

b.      Defendants directly or indirectly, recklessly, knowingly or with intent to defraud offered and sold securities in violation of § 11-51-501(1), and therefore are each liable to the Plaintiffs for damages under C.R.S. § 11-51-604; and

c.      Defendants offered or sold securities by means of untrue statements of material fact or omissions to state material facts necessary in order to make the

statements, in light of the circumstances under which they were made, not misleading (the investors not knowing of the untruths or omissions) and therefore Defendants are liable to the Plaintiffs under C.R.S. § 11-51-604.

76.     Each Defendant knew, or was reckless in not knowing, of the other Defendants violation of the Colorado Securities Act, and gave substantial assistance to the other Defendants who are liable to Plaintiffs for damages under C.R.S. § 11-51-604.

77.     Each of Defendants is jointly and severally liable to Plaintiffs for damages, rescission, restitution, interest, disgorgement, costs, reasonable attorney's fees, and other legal and equitable relief on behalf of all persons injured by the acts and practices described in this claim for relief pursuant to under C.R.S. §§ 11-51-602 and 604.

## SEVENTH CLAIM FOR RELIEF

(Breach of Contract)

78.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 77.

79.     Pursuant to the Prospectus, Defendants entered into contracts with Plaintiffs to return a guaranteed 10% annually on any funds invested in GREF;

80.     Pursuant to the Prospectus, Defendants entered into contracts with Plaintiffs to return Plaintiffs' investment funds after twelve months upon request;

81.     Pursuant to the Prospectus, Defendants entered into contracts with Plaintiffs to invest Plaintiffs' funds in international real estate investments; and

82.     Defendants failed to do any of these things.

83.     Plaintiffs fully performed their part of the contract by tendering payment of monies over to Defendants.

84.     Defendants breach of contract caused and continues to cause substantial damages suffered by Plaintiffs, including those set forth above.

## EIGHTH CLAIM FOR RELIEF

(Unjust Enrichment)

85.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 84.

86.     Plaintiffs conferred benefits upon Defendants through payment of investment monies to Defendants.

87.     These benefits were accepted and appreciated by Defendants.

88.     The benefits so conferred were accepted under circumstances described above such that it would be inequitable for Defendants for retain the benefits without payment therefore.

## NINTH CLAIM FOR RELIEF

(Deceptive Trade Practices)

89.     Plaintiffs reiterate and incorporate herein by this reference the above allegations numbered 16 through 88.

90.     As set forth above, Defendants have engaged in unfair and deceptive trade practices, specifically, in violation of C.R.S. § 6-1-105(1)(b)-(c) and/or (e).

91.     The deceptive trade practices occurred in the course of Defendants' business.

92.     The deceptive trade practices constitute bad faith.

93.     This conduct significantly impacts the public as actual or potential consumers of Defendants' services and/or property.

94.     This conduct caused Plaintiffs to suffer injury in fact to a legally protected

interest.

95.     C.R.S. § 6-1-113 entitles Plaintiffs to recover the greater of the amount of the actual damages sustained, or five hundred dollars, or three times the amount of actual damages sustained, plus the costs of the action together with reasonable attorney's fees as determined by the Court.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against all Defendants as follows for:

(a) A judgment declaring the conduct of Defendants to be in violation of law as set forth herein;

(b) A judgment awarding Plaintiffs compensation for general and special damages;

(c) Treble damages pursuant to the Colorado Consumer Protection Act;

(d) All damages available under CRS 11-51-604, including consideration paid for the securities;

(e)  The return of all monies paid over to defendants, together with interest thereon;

(f)    Punitive damages;

(g)  Pre-judgment and post-judgment interest as provided by law;

(h)   Attorneys' fees as provided by law;

(i)  Costs including expert witness fees;

(j)  Imposition of a constructive trust and/or equitable lien against property in which Plaintiffs are entitled to claim an interest including all funds currently frozen by any authority; and

(k) Such other and further relief as the Court deems just and proper under the circumstances.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.

Dated  this 22nd day of June, 2007.

 /s/   James A. Jablonski, Esq.
James A. Jablonski, Esq.
Matthew J. Casebolt, Esq.
Rumler Tarbox Lyden
Law Corporation PC
1777 S. Harrison Street, Suite 1250
Denver, Colorado 80210
Telephone: 303-333-7733
Fax: 303-355-6036
E-Mail: jjablonski@rumlerlaw.com

Attorneys for Plaintiffs: Thomas
Severino, Sr., Thomas Severino, Jr.,
Dawn Poreda, Glenn Poreda, Joseph
Honahan, Kristin Honahan and Jeffrey
Owens

<u>Addresses of Plaintiffs:</u>

Thomas M. Severino, Sr.
23649 E. Otero Drive
Aurora, Colorado 80216

Thomas M. Severino, Jr.
13390 Misty Street
Broomfield, Colorado 80020

Dawn Poreda and Glenn Poreda
19065 E. 120th Place
Commerce City, Colorado 80022

Joseph Honahan and Kirsten Honahan
23324 Allendale Avenue
Parker, Colorado 80138

Jeffrey Owens
7651 South Cove Circle
Littleton, Colorado 80122